NUMBER 13-07-00412-CV



COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


ALVIN MELVIN MERCER, JR., Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 130th District Court of Matagorda County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Benavides


Memorandum Opinion by Justice Benavides


 

 In this appeal from a family violence protective order, the appellant, Alvin Melvin
Mercer, Jr., argues that the trial court erred when it prohibited his counsel from pursuing
a line of questioning during cross-examination that Mercer believes would have impeached
a witness. The offer of proof in the record, however, reveals that the evidence Mercer's
counsel intended to elicit would not have gone to the issue of the witness's credibility, and
thus, the trial court did not abuse its discretion when it halted the line of questioning on the
grounds of irrelevancy. We affirm.

I. Factual Background

 On April 24, 2007, the State, on behalf of Tiffany Leca, filed an application for a
family violence protective order against Mercer, Leca's former live-in boyfriend. See Tex.
Fam. Code Ann. § 71.004(3) (Vernon 2002) (including "dating violence" within the definition
of "family violence"); id. § 71.0021(a) (Vernon 2002) (defining "dating violence"). In the
application, Leca alleged four incidents between 2004 and 2007 when Mercer forcefully
pushed her and verbally threatened her with bodily harm.

 The trial court held a hearing on the State's application for protective order on June
26, 2007. Craig Rucka, a Matagorda County Deputy Sheriff, was the first witness called. 
Officer Rucka stated that on October 8, 2006, he saw Mercer engage in what he believed
to be "assaultive conduct" when Mercer "grabbed her [Leca] and pushed her." Rucka
arrested Mercer on the scene after wrestling him to the ground and pepper-spraying him.

 Leca herself was the next witness called, and she was aggressively questioned
about contradictions in her description of the October 8 events. First, on December 12,
2006, Leca provided a sworn affidavit disputing Officer Rucka's story:

We [Leca and Mercer] were arguing that night and upon returning home a
sheriff escorted me back to my house to get some personal belongings. The
sheriff was never called . . . . At no time during the night did Alvin Melvin
Mercer, Jr., act in a wrongful way. He was thrown down and pepper sprayed
in the face for no apparent cause.


 Then, at the hearing, Leca recanted her affidavit testimony and said that Officer
Rucka's story was, in fact, true. In doing so, she admitted that her earlier affidavit had
been untruthful:

Q: Now, then, so, you heard the officer's testimony, did you not, that you
had been assaulted?


A: Yes, sir, I did.


Q: Okay. Yet, at a time closer to the point in time of the event, you were
willing to sign a document without Mr. Mercer's being present that
said nothing wrong happened did you not?


A: Yes, sir. That affidavit is a lie.


Q: This affidavit is a lie?


A: So, I'm a liar, right? I lied to -


Q: So, you are now admitting to this court that you committed perjury?


A: Yes, sir, at that point.


 Mercer's counsel was, at this juncture, developing a trial strategy to discredit Leca's
allegations by impugning her honesty. Presumably seeking to advance this strategy,
Mercer's counsel next attempted to question Leca about a recent conviction for driving
while intoxicated (DWI) and her supposed violation of the probation she received: "Have
you completed all the terms--are you in good standing, if you will, inside those terms of
your probation?"

 To this question, Leca replied, "Yes, sir." Almost immediately, however, the State
objected to the entire "line of questioning," arguing that Leca's adherence to her DWI
probation was irrelevant to the issue of whether Mercer had committed family violence and
whether family violence was likely to occur again in the future. In response, Mercer's
attorney defended his strategy by explaining, "Your Honor, I'm going to the credibility of this
witness and the fact that she said she was in good standing and we have reason to believe
that she's actually broken some of the terms of her [DWI] probation." The trial court
sustained the State's objection on the basis of irrelevancy. See Tex. R. Evid. 402.

 A similar dispute occurred later in the hearing when Mercer called Robert Gannaway
to the stand to testify that he had seen Leca drink alcohol at a fishing tournament in
Sargent, Texas. The State again objected; Mercer's counsel explained that he was
seeking to impeach Leca's credibility. The trial court again sustained the objection on the
basis of irrelevance. See id.

 At the conclusion of the hearing, the court granted the protective order. The
following day, Mercer filed an appeal, arguing that the trial court erred by preventing his
attorney from impeaching Leca on the stand.

II. Preservation of Error

 The sole issue in this appeal is whether the trial court erred by excluding evidence
that Mercer was attempting to elicit from Leca on cross-examination. Such error must be
preserved by an offer of proof. See Tex. R. Evid. 103(a)(2). The State argues that Mercer
failed to make the necessary offer of proof, but we disagree. It is true that Mercer's
counsel did not explicitly make an offer of proof, but under the rules of evidence, Mercer's
counsel did not need to satisfy this formality as long as the "substance of the evidence"
was "apparent from the context within which questions were asked." Id.

 It is apparent from the context of the questions asked by Mercer's counsel that he
was seeking to impeach the witness by showing that she was dishonest about whether she
had adhered to the terms of her probation. This is not mere speculation; Mercer's counsel
explicitly stated, "I'm going to the credibility of this witness and the fact that she said she
was in good standing and we have reason to believe that she's actually broken some of
the terms of her [DWI] probation." Furthermore, when the trial court later prevented
Mercer's counsel from questioning Gannaway about Leca's alcohol consumption at a
fishing tournament, Mercer's counsel explained that he was seeking to introduce the
evidence in order to bring Leca's credibility into question. All of these statements in the
record make the substance of the evidence Mercer sought to introduce abundantly
apparent. Therefore, the complaint was preserved. We now turn to the merits of the
complaint.

III. Relevance

 Mercer asserts that the trial court erred by halting the line of questioning about DWI
probation which was intended to impeach Leca. We believe, however, that the trial court
did not abuse its discretion in finding that line of questioning to be irrelevant in a family
violence protective order hearing.

 Under the Sixth Amendment, defendants have the due process right to fully and
completely confront adverse witnesses during cross-examination--but that right is not
absolute. See U.S. Const. amend. VI; Carpenter v. State, 979 S.W.2d 633, 634 (Tex.
Crim. App. 1998); see also Lopez v. State, No. 12-02-00380-CV, 2003 Tex. App. LEXIS
10788, **11-12 (Tex. App.-Tyler Dec. 23, 2003, pet. denied) (mem. op, not designated for
publication) (applying this principle in a dating violence protective order hearing). The trial
court has the discretion to impose reasonable limits on cross-examination based upon
concerns about "harassment, prejudice, confusion of the issues, and marginally relevant
interrogation." Carpenter, 979 S.W.2d at 634 (emphasis added); Striedel v. Striedel, 15
S.W.3d 163, 166 (Tex. App.-Corpus Christi 2000, no pet.); see also Lopez, 2003 Tex. App.
LEXIS, at **11-12.

 In a hearing on a family violence protective order the only relevant issues are
whether family violence has occurred and whether it is likely to occur in the future. Tex.
Fam. Code Ann. § 85.001 (Vernon 2002); In re Epperson, 213 S.W.3d 541, 544 n.4 (Tex.
App.-Eastland 2007, no pet.) (acknowledging a "mutually violent" relationship between a
complainant and her ex-fiancé, but refusing to factor the culpability of the complainant into
its decision because her behavior was "not relevant to [the] inquiry into whether the
evidence sufficiently shows that [the ex-fiancé] is likely to commit family violence in the
future"). Because a trial court has the discretion to limit irrelevant questions on cross-examination, it follows that a trial court in a family violence protective order hearing may
limit any cross-examination if the questions asked are irrelevant to whether family violence
occurred in the past or will occur in the future. See Carpenter, 979 S.W.2d at 634; Dukes
v. State, 239 S.W.3d 444, 448-49 (Tex. App.-Dallas 2007, pet. ref'd).

 For example, in an unpublished 2003 opinion, the Tyler Court of Appeals found no
error in a trial court's decision to halt the cross-examination of a witness in a dating
violence protective order hearing when the defendant's attorney asked questions
concerning the complainant's knowledge of the Bible, out-of-wedlock pregnancy, and
adultery. See Lopez, 2003 Tex. App. LEXIS, at **11-12. The Court reasoned that these
issues were "marginally relevant" to the question of whether family violence had occurred
or would occur in the future, and thus it was not an error to exclude the evidence as
irrelevant. Id.

 In this case, we are confronted with a similar question of relevancy. Specifically, we
must decide whether Leca's alleged violation of her alcohol probation terms was relevant
to whether Mercer had committed dating violence in the past or whether it was likely that
he would do so in the future. We do not believe the particulars of her adherence to her
probation are relevant to those questions. See Callins v. State, 780 S.W.2d 176, 196 (Tex.
Crim. App. 1989); see also Jones v. State, No. 14-97-00180-CR, 1999 Tex. App. LEXIS
2429, at *8 (Tex. App.-Houston [14th Dist.] Apr. 1, 1999, no pet.) (mem. op., not
designated for publication) ("[D]enying a defendant the right to impeach a witness on the
basis of the witness' deferred adjudication probation does not deny the defendant his
constitutional right of confrontation."). The relevant question is whether Leca was honest
on the four occasions when she claimed that Mercer had committed family violence--and,
in fact, Mercer's counsel did ask her these questions. Moreover, he was not limited by the
trial court when he asked them.

 In short, the inquiries of Mercer's counsel into Leca's supposed probation violations
were not relevant in a family violence protective order hearing, and thus the trial court did
not abuse its discretion in halting the cross-examination. (1)

IV. Conclusion

 The trial did not err when it halted the cross-examination of Leca on the basis that
the questioning was irrelevant. We AFFIRM the judgment of the trial court.

 


 __________________________

 GINA M. BENAVIDES

 Justice


Memorandum Opinion delivered and

filed this the 31st day of July, 2008.

1. Mercer cites Davis v. Alaska in his appellate brief when he proposes that "when a witness is a
confessed perjurer . . . the motives to lie are unquestionably 'on the table' and the trial court abuses its
discretion by disallowing an examination into . . .motives and credibility." See 415 U.S. 308, 319 (1974). 
Mercer, however, misreads Davis in precisely the same way the appellant in Callins misread Davis. Callins
v. State, 780 S.W.2d 176, 196 (Tex. Crim. App. 1989). As the Callins court explained:


In Davis, petitioner was denied his constitutional right of confrontation because he was not
allowed to impeach a witness on the basis of his juvenile record regarding probation for
burglary. Unlike this case, the petitioner in Davis was able to show that the witness might
have been subject to undue pressure from the police and made his identification of petitioner
under fear of possible probation revocation. This showing by the petitioner overcame the
State's asserted interest in preserving the confidentiality of juvenile delinquency proceedings.
In the instant case, however, appellant has not made any showing that witness Henderson
testified against him as a result of bias, motive or ill will emanating from his status of deferred
adjudication. Appellant has failed to lay the necessary predicate that would invoke the right
of confrontation.


Id. In other words, evidence that a state's witness is on probation for an alcohol offense may be relevant to
show the "potential bias or interest of the witness in helping the state," but in this case, Mercer's stated
purpose was not to show that Leca was biased in favor of the state; it was to show that she was dishonest. 
See Salazar v. State, 222 S.W.3d 10, 16-17 (Tex. App.--Amarillo 2006, pet. ref'd) (citing Maxwell v. State,
48 S.W.3d 196, 199 (Tex. Crim. App. 2001)); see also Moreno v. State, 22 S.W.3d 482, 485-86 (Tex. Crim.
App. 1999). Davis, therefore, is distinguishable.